IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JACQUELINE KAHLER** | : | |
| | : | |
| **239 Westbrook Dr.** | : | |
| **Clifton Heights, PA 19018** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | **NO.** |
| | : | |
| **v.** | : | |
| | : | **COMPLAINT** |
| **THE COUNTY OF DELAWARE,** | : | |
| **PENNSYLVANIA** | : | |
| | : | |
| **DELAWARE COUNTY COUNCIL** | : | |
| | : | |
| **COUNTY COUNCIL MEMBERS:** | : | |
| **DR. MONICA TAYLOR,** | : | |
| **MS ELAINE PAUL SCHAEFER,** | : | |
| **MR.  KEVIN M. MADDEN,** | : | |
| **MS. CHRISTINE A. REUTHER,** | : | |
| **MR. RICHARD R. WOMACK,** | : | |
| | : | |
| **MR. JONATHAN LICHTENSTEIN** | : | |
| **MS. CHRISTINE KECK** | : | |
| **MR. EDWARD BEEBE** | : | |
| **MR. ANTHONY MIGNOGNA** | : | |
| **MS. SAMANTHA COX** | : | |
| **MS. DANIELLE KOERNER** | : | |
| | : | |
| **JOHN AND JANE DOES #1-10** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **201 West Front Street** | : | |
| **Media, PA 19063** | : | |
| **Defendants** | : | |
| | : | |

### CIVIL ACTION COMPLAINT

JACQUELINE KAHLER ("Plaintiff" ),  an adult female, by her undersigned counsel,

brings this action against THE COUNTY OF DELAWARE ("County") and the above referenced

entities, namely Delaware County and Delaware County Council, as well as the individuals named in both his or her individual and official capacities, alleging as follows:

## INTRODUCTION

1.  The Plaintiff, an employee in Delaware County's Department of Emergency Services ("DES") from December 4, 2023 until February 2, 2004, brings this action against the County and County Council, which together with those named hereinabove acting both affirmatively and negligently, have discriminated against her on account of her sex and maintained a hostile and illegal working environment contrary to applicable laws and stated County policy. The end result enabled Timothy Boyce ("Boyce") the Head of DES from November 2016 until May, 2024, to sexually assault and otherwise harass Plaintiff, forcing her to quit her employment with the County, amounting to constructive discharge.

2.  Plaintiff brings this action pursuant to federal law; namely for violation of her U.S. Constitutional Rights pursuant to the Civil Rights Act of 1866, 42. U.S.C. Section 1983 and for violation of her Civil Rights pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e *et seq*. Relief is also sought pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* and state law, where Plaintiff seeks compensatory and punitive damages (where applicable) from Defendants.

## PARTIES

3.  JACQUELINE KAHLER is 39-year-old female citizen of Pennsylvania who resides in Clifton Heights, Pennsylvania within Delaware County, PA. She was an "employee" as defined in the above-referenced federal and state statutes and enjoys protected status thereunder when it comes to her sex .

2

4.  Defendant, THE COUNTY OF DELAWARE, is a Pennsylvania municipal corporation with home rule powers. It is located in Media, Pennsylvania. It is an "employer" as defined in the above-referenced federal and statutes. It also constitutes a political subdivision, as that term is defined in the Political Subdivision Tort Claims Act ("Tort Claims Act"), 42 Pa. C.S.A. Sections 8541-8542, which subjects it to the torts pled herein

5.  Other Defendants include the County's governing body, known as County Council as an  entity, together with its individual members consisting of  Dr. Monica Taylor, Ms. Elaine Paul Schaefer, Mr. Kevin M. Madden, Ms. Christine A. Reuther, and Mr. Richard R. Womack. Other Defendants include  Mr. Jonathan Lichtenstein, Esquire, former Deputy County Solicitor & now County Solicitor,  Ms. Christine Keck, County Chief  Human Resources Office/ Personnel Officer, Mr. Edward Beebe, former DES Deputy Director, promoted to Interim Director, Ms. Regina Rodia, DES Office Manager,  Ms. Samantha Cox, DES Deputy Director of Training,  and Mr. Anthony Mignogna, former Communications Director and now promoted to Deputy Director, and Ms. Danielle Koerner, Chief of Special Operations.  This is in addition to other John and Jane Doe defendants who include previous Council persons and other supervisory employees who will be identified during the course of discovery.

6.  All of these supervisory individuals named hereinabove  have facilitated and protected Boyce when it came to his well- known and inappropriate sexual behavior in two ways. First, as supervisory personnel, they either knew of or had reason to know of  instances of Boyce's sexual misbehavior.  Secondly, the positions of all of those named came with an affirmative obligation to inquire and investigate what was taking in DES. Instead of warning Plaintiff about him, those named enabled Boyce, in his own words, to "hide in plain sight." for many years. It was that crass sexual misbehavior, going on for years, which culminated in his sexual assault of Plaintiff, an assault that could have altogether been prevented, if these Defendants had exercised their

3

affirmative obligations. At all times relevant hereto, all individual Defendants were acting in their individual and official capacities and under color of the law of the Commonwealth of Pennsylvania.

## JURISDICTION & VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 because this is a civil action arising under federal law.

8. Plaintiff also invokes the supplemental jurisdiction of this Court over her related claims arising under state law pursuant to 28 U.S.C. §1367(a), all of which are so related to the federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b) and (c), since both Plaintiff and Defendant reside and do business in the Eastern District of Pennsylvania, and since the events giving rise to Plaintiff's claim occurred in the Eastern District of Pennsylvania.

## FULLFILLMENT OF CONDITIONS PRECEDENT

10. Plaintiff has fulfilled all conditions precedent to the institution of this action under federal and state law. Plaintiff dual-filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRA") on or about April 2, 2024. The EEOC assigned her Charge # 530-2024-04788. The Charge as filed claims sex discrimination on a continuing basis commencing in December 4, 2023 through to her constructive discharge on February 2, 2024. Specifically, as set forth herein, Plaintiff has been discriminated against and adversely impacted as a female person who has

4

been forced to work in an illegal sexist environment, as created by Boyce and having been allowed to continue by the other named Defendants.

11. Pursuant to Plaintiff's request to the EEOC made on June 14, 2024, the EEOC issued a Right to Sue letter to the Plaintiff on June 20, 2024 stating that it was closing the matter. Subsequently, the EEOC withdrew that letter, referring the matter to the U.S. Department of Justice ("DOJ") for purposes of issuing the requisite Right to Sue letter given that the County is a governmental entity. A Right to Sue Letter from DOJ was issued dated July 9, 2024, with receipt acknowledged by Plaintiff's counsel as of July 10, 2024.

12. This lawsuit has been timely filed as it has been brought within ninety (90) days of receipt of the issuance of the Right to Sue letter.

## FACTS

13. Plaintiff was employed by Delaware County in DES beginning December 4, 2023 and ending on February 2, 2024, after being sexually assaulted by her boss Director Boyce.

14. Plaintiff has always had an interest in emergency services. This interest, as well as her need as a single mother of three children for a better job with a regular salary and benefits, motivated her to apply and come work for the County.

15. Additionally, Plaintiff is a devout Catholic. She went from an all-girls Catholic high school into the beauty industry as a stylist, where she was largely surrounded by women.

16. On December 4, 2023, DES Director Boyce first hired Plaintiff as a $30.00 per hour "coordinator." She was to work on Mondays, Tuesdays, Wednesdays, and Fridays. At first, Plaintiff worked in a cubicle that was located separate and apart from Mr. Boyce's office.

17. In working for the County of Delaware, a governmental entity, Plaintiff, rightfully expected to rightfully be able to working in safe, non-sexist, non-harassing and non-predatory environment as provided by law and County policy.

18. Sometime in early January, 2024, Boyce told Plaintiff that his assistant was leaving

5

for a different County department. He offered Plaintiff that position.

19. In Mid- January, Boyce had Plaintiff move into her own office, physically connected to his. Boyce told Plaintiff that she was being promoted to the position of his "executive assistant", a full-time position paying $56,000 per year, along with benefits, including health insurance and pension benefits, all subject to approval by County Council.

20. During Plaintiff's entire tenure with the County, Boyce continually made sexually inappropriate comments to her that made her uncomfortable, comments which included his insisting that he could describe her in three words: "Smart, Intriguing, Sexy." He also told her that she "had a nice ass." On a daily basis he asked her if she liked his outfit and commented on what she was wearing, as well. He repeatedly called her "beautiful." At the same time, from the inception of her employment, he sought to isolate her by telling her not trust or befriend anyone else in the office other than him and employee, Maille Bonsall.

21. This initial inappropriate behavior was followed by Mr. Boyce's actual sexual assault and battery of Plaintiff that took place on January 30, 2024, at approximately 3:30 p.m. Telling her that he had to leave early to take his grandson to the doctor, Boyce summoned her into his office, to a place therein obscured from visibility by others:

-First, he physically pulled her in to him to hug her, by grabbing her face and cheeks. He pulled her in to kiss her on the mouth. However, Plaintiff forcibly turned her head away, such that he ended up kissing the side of her head.

-Then Boyce said "You have a really nice ass. Let me feel it." Plaintiff backed away from him. However, despite her backing away, he grabbed her backside.

-After the assault and battery were over, Plaintiff left his office for her office in a state of shock and disbelief, and then Boyce left through his office's side door .

6

22. None of this physical activity described hereinabove was either invited or consented to by Plaintiff.

23. Upon returning to her office Plaintiff packed up her belongings and left early for what would prove to be her last day of work. She went to her car, where she began crying. Upon returning home, she showered in an attempt to cleanse herself. She then spent the evening simply hysterical, crying and suffering panic attacks that affected her breathing.

24. On the next day, Wednesday, January 31, 2024, Plaintiff called herself out from work by text to Maille Bonsall, as she did not want to call Boyce. Simply stated Plaintiff could no longer bring herself to re-enter the DES offices and revisit the situation.

25. On Friday, February 2, 2024, Plaintiff spoke by telephone with Boyce. Despite Boyce's informing her that County Council had approved her new full-time position, which would pay her $56,000 together with healthcare benefits and a pension, Plaintiff notified Boyce that she would not be returning to work at DES. Feigning ignorance of what he had occasioned, he claimed that he was wondering where she had been, telling her that he was going to declare her "missing" and put her face on a milk carton. Clearly, Boyce wanted Plaintiff to come back for more of his abuse. Plaintiff would have none of it.

26. By February 6, 2024, Plaintiff summoned the courage to send Boyce a telephonic "text", telling him how disgusted she was by the January 30, 2024 assault, protesting his power as a predatory male boss to take advantage of her. She also mentioned the resulting anxiety and stress that she was continuing to experience, stress and anxiety that she continues to experience to this day.

27. By texting his response that day, Mr. Boyce acknowledged and emphatically took responsibility for what had taken place. Pertinent parts of that text exchange include the

following:

- Plaintiff began the text by stating that she had to "get some things off my chest that have been weighing on me, that for whatever reason I didn't have the courage to say when it happened."

- Plaintiff went on to state that "What you did at work on Tuesday was absolutely disgusting and disrespectful beyond words. You totally took advantage of me and made me feel like a vulnerable piece of meat."

- Plaintiff continued that "you felt like you had all the 'power' to come into my personal space and everything would just be fine because it's what YOU wanted. Never for once thought about if I would be ok with that or not."

- After telling him that for the one time in twenty years that Plaintiff had left the beauty industry for government service, she then had to return to a place safer than her DELCO position. She asked him " How would you like someone to do what you did to me to one of your daughters? I am sure it would make you sick."

- Plaintiff then went on to state that, hopefully, this would "make[s] you think twice before you decide to do this to someone else."

- At this point, Boyce then stated "That was never my intention and I apologize. I have respect for you. Never my intention to come on to you."

- Plaintiff's response was "What you did showed ZERO respect and you were absolutely coming on to me so you should have just stopped with the apology. The rest is bullshit."

- Boyce's final response was "I am sorry and not making excuses."

28.  The treatment that Plaintiff experienced was merely one of many instances of the inequity and abuse of female employees that prevailed in DES with respect to sex-based harassment, making for an illegal work environment during Boyce's eight-year tenure.

29.  Upon investigation, information and belief, when it came to allegations of

8

inappropriate sex-based harassment by males other than Boyce in DES, supervisory personnel would turn the matter over to Boyce. Instead of referring these matters to appropriate County authorities, Boyce reportedly would simply cover up these matters. Upon information and belief this was done for fear that a referral would eventuate in an investigation of Boyce's own activities.

30. Upon investigation, information and belief, Boyce's crass misbehavior was not isolated to Plaintiff, but extended to other women as well, including other female employees and even prospective female candidates for employment.

31. For years preceding Plaintiff's employment Boyce's and others' inappropriate practices were the cause of hearsay and gossip, not only amongst DES employees, but also amongst County employees located in the County Courthouse. One example appeared in a March 16, 2023 post on the 911 Facebook page of Richard Berry Heavener who, in not recommending Delaware County Emergency Services 911, explicitly stated that trainers use a position of power to have affairs behind their wife's back with female co-workers . "The county should be very careful on who they hire because this could cause a sexual harassment lawsuit or worse." The question arises as to why Defendants did not investigate and correct this environment. Simply stated, those elected officials and non-elected supervisory personnel responsible for running the County have allowed an illegal environment to persist, characterized by persistent and flagrant sexual harassment of women in its most crude and base form.

32. Moreover, upon investigation, information, and belief, certain DES supervisory personnel, including but not limited to then Deputy Director Edward Beebe and Regina Rodia were specifically witness to and well aware of Boyce's inappropriate customs and practices when it came to certain women and deliberately chose not to report the infractions as required.

9

For instance, DES employee Brigid Payne, responsible for the uniform budget was in Boyce's office in mid-September, 2022, along with Mr. Beebe and DES Office Manager, Regina Rodia. Boyce required Ms. Payne to order tank tops for female employees and upon their arrival, Boyce asked Ms. Payne to try one of them on, which she did, albeit under a cardigan. Ms. Payne told Boyce that these female tank tops were totally inappropriate for work wear, adding that if someone were to bend down, her chest would be exposed. Boyce's response was "Oh really ! Let me see. Bend over." Ms. Payne refused, informing him that it would be inappropriate. Reportedly, Mr. Beebe and Ms. Rodia witnessed Boyce's inappropriate behavior. Moreover, upon further investigation, Ms. Rodia also told Boyce that what he was then asking and doing were not appropriate.

33. With respect to the tank top incident described above, upon investigation, information and belief, Ms. Payne, spoke about this with supervisory personnel Chief of Communications Anthony Mignogna.

34. In a separate meeting in late September, 2022, Ms. Payne spoke with Ms. Samantha Cox, her supervisor and Mr. Mignogna disclosing preliminarily what happened in a separate incident with Boyce after the tank-top incident, where Ms. Payne, told them that if she were to give further details, that they would be required to report the incident. They both acknowledged that they understood and told her to proceed further. She advised them of totally inappropriate inquiries by Boyce about sexual habits, including asking if she had ever had sex with women, accusing her of doing so with another employee. Notwithstanding Ms. Payne's relating this information, nothing appeared to have resulted against Boyce. Moreover, on October 28, 2022 within a month of her complaint to Mignogna and Cox, Mr. Mignogna was promoted.

35. Upon investigation, information and belief, Brigid Payne's husband, Andrew Payne

confronted Boyce and others in supervisory positions at DES in August of 2023 with respect to his wife's experiences. As with his wife's complaints to management, his complaints should have been forwarded to Personnel/HR and County Council. Again, there is no evidence that they were forwarded and certainly nothing was further investigated or rectified when it came to Boyce's predatory behavior.

36. Upon investigation, information and belief, supervisory employee and Office Manager Regina Rodia was described by Boyce as his "right hand." She was Boyce's first promotion during his tenure. It is believed that for years, she has known about Boyce's exploits, referring, along with others, to employee Maille Bonsall as Boyce's "Pony" and to Ms. Bonsall and employee Ms. Sara Senkow (now Schiller) as his "girlfriends." Upon information and belief, Ms. Rodia was also well aware of office sexual exploits in the office, telling DES employee Ms. Paula Richards in July 2022 not to use the bathroom across from Boyce's office as "that's where nasty things happen" and not to use another bathroom with a shower as it was used as a sex room. At the same time it is believed that she never made a report to the Department of Personnel or HR about the tank top incident or other incidents that, as his Boyce's "right hand", she must clearly have had knowledge.

37. On May 7, 2024, Plaintiff received a text from Ms. Rodia saying that she should have warned Plaintiff, acknowledging that she had known about Boyce's tendencies for years, but was afraid of losing her job. Reportedly, Ms. Rodia has also acknowledged to Ms. Maille Bonsall that she should have warned Plaintiff, as well as Ms. Bonsall, about Boyce's tendencies.

38. In addition to Mr. Beebe's being a direct witness to Mr. Boyce's activities in the tank-top meeting, upon investigation, information, and belief, at Boyce's request, it was Mr. Beebe whom Boyce would repeatedly send to find employee Maille Bonsall, who repeatedly

tried to physically distance herself from Boyce's advances. It was Beebe who would direct her to return. Mr. Beebe, Mr. Mignogna, and Ms. Rodia constantly saw Boyce come into Ms. Bonsall's office and shut the door behind him, despite Boyce's stated policy that doors were to be shut only when "personnel matters " were being discussed. However, Ms. Bonsall had nothing to do with personnel matters. They clearly saw him stalk her. Moreover, there were instances where Boyce would ask Ms. Bonsall to go somewhere with him alone in his car and she refused, she reported these requests to Ms. Rodia, who told her that she objected to this behavior directly to Boyce. However, upon information and belief, there is no evidence that Mr. Beebe, Mr. Mignogna, or Ms. Rodia exercised their affirmative obligations as County employees to complain to HR/Personnel about Mr. Boyce.

39.    Upon investigation, information and belief, Council as a body and the individual Council defendants routinely rubber-stamped Boyce's personnel requests which demonstrated a record of disproportionately favoring his personally- selected young and relatively inexperienced females. Council and individual Council defendants were clearly on notice that something was amiss.  Any elemental review or investigation would have revealed what was taking place with Boyce.

40.    Moreover, well prior to Plaintiff's assault, rumors had been rampant in DES and in the Courthouse, given Boyce's squiring around young DES employee, Maille Bonsall, again referred to by others as his "girlfriend" or "Pony". Incredibly, from County Council on down, "responsible" or instead "irresponsible" supervisory employees have chosen to maintain that they had no knowledge of what Boyce was up to, allowing him to "hide in plain sight." .

41.    Council's and its members public stance of "see no evil, hear no evil" ignores the fact that, as a body and individually, they had  affirmative responsibilities to monitor County

12

employees. This stance flies in the face of their assumed responsibilities to comply with the affirmative responsibilities required by federal, state and local law, including their own personnel policies.

42.    The County Personnel Handbook specifically requires reporting of misconduct, reporting which failed to take place with respect to Boyce.  Upon investigation, information and belief, as was the case with Ms. Rodia and  other DES employees, named and unnamed herein, fearful for their jobs and retaliation, they were  afraid to so report.  However, had Council, appropriate County officers, such as  Personnel Head Heck, Edward  Beebe, Anthony Mignogna, Samantha Cox, Regina Rodia, or other named and unnamed County supervisory personnel been doing their jobs, Boyce would have been removed well before he had the chance to assault and otherwise exploit Plaintiff.

43.    Upon investigation, information and belief, Boyce himself referred to his exploits as being protected by the powers that be, enjoying a situation where he was, in his own words, able to "hide in plain sight." This was all as a result of his prominence and political connections with Delaware County elected and party officials, including all of the named defendants.

44.    Upon investigation, information and belief, Boyce bragged to Ms. Maille Bonsall about his connection to Council members. He told her that Council members Madden and Zidek were "in his pocket". When Taylor, Schaeffer, and Reuther were elected, he told Ms. Bonsall that while everyone's job was at risk,  his influence was such that  Ms. Bonsall would be fine, as long as she did whatever he asked.

45.    Ms. Joanne Fisher  filed  an EEOC charge in late January, 2024 received by Defendant Lichtenstein. Despite the County's being  formally put on notice of Boyce's preference for specifically named young female employees, including Plaintiff,  nothing appears

to have been investigated or otherwise done about Boyce for months. Other EEOC charges involving Boyce's activities were also filed giving Defendant Lichtenstein and the County notice of the situation.

46. Recognizing the passage of months after the County's receipt of EEOC notices of charges and frustrated by Defendants' total failure when it came to making so much as inquiry as to Plaintiff's abrupt disappearance from work, Plaintiff (via counsel) on April 2, 2024 emailed the DELCO District Attorney's office, imploring D.A. Stollsteimer to investigate and prosecute Boyce. Plaintiff was concerned, not simply about herself, but also about other women subjected to Boyce and the environment which the County had allowed him to maintain. Plaintiff believes that had she not reported Boyce's behavior to the District Attorney, no steps would have been taken to investigate Boyce by the Defendants and that he would still remain in his position today, unsupervised as before.

47. The D.A.'s office conducted an investigation, which included interviewing the Plaintiff. It then referred the matter to the Pennsylvania Attorney General's office for further investigation and possible origination of criminal charges, purportedly so to avoid questions of conflict of interest.

48. It was not until April 25, 2024 that Council placed Boyce on administrative leave.

49. Moreover, it was not until May 9, 2024, months after Plaintiff's disappearance, that Edward Beebe disingenuously reached out to Plaintiff by text which reads in part as follows:

> First and foremost, I can't event imagine the hell your going through and have been thru. I'm sick over it and frankly disgusted.
>
> I would love to chat sometime. Not necessarily about your situation but other things that are hanging out there. Just not sure who and what to believe in house.
>
> I saw you 3 days, went on vacation and you were gone.

14

50.   On May 21, 2024 Plaintiff did speak with Mr. Beebe who expressed sorrow and disgust for her sexual assault, but was glad that Plaintiff spoke up and prompted Boyce's removal. Beebe made a point of saying that he, along with many others in the office who have been there a long time have been "fed up" with Boyce, stating that Boyce told him that Plaintiff left simply because she wanted to go back to cutting hair. In a text that same day to Plaintiff, Beebe said "If anyone is suggesting I'm involved with Tim, couldn't be more wrong." If Beebe were truly uninvolved with Boyce and "fed up," he should long ago have exercised his responsibility by reporting Boyce to HR/Personnel. Then Boyce would have been unable to assault Plaintiff.

51.   Upon information and belief, despite the fact that Mr. Beebe has worked for DES since 2015 and has served with Boyce for years, comprising virtually all of Boyce's tenure with the County, and despite the fact that his office was only fifteen feet from Boyce's, Mr. Beebe pleads ignorance. Notwithstanding, he was reportedly present at the tank- top incident referred to above. Moreover, upon information and belief, he has acknowledged to others that he knew of an incident at a local restaurant where Boyce proposed a sexual threesome, that would include Boyce, a waitress and one of his employees.

52.   The above-referenced facts as pled, contradict any claim by Mr. Beebe of ignorance about what was going on when it came to Boyce's inappropriate conduct. It is simply inconceivable, given his tenure, that Mr. Beebe did not know of a departmental atmosphere where women were treated as nothing more than a sexual-commodities to be used and abused. Upon information, investigation and belief, Mr. Beebe personally supported that atmosphere of predatory behavior that gave rise to the "hell" that he was referring to hereinabove.

53.   Further, it was not until May 10, 2024 that County Council voted to terminate

Boyce's employment, only days before the Pennsylvania Attorney General filed a May 16, 2024 criminal complaint against him for his actions against Plaintiff. All the while, Council President Monica Taylor disingenuously professed Council's ignorance, avoiding mention altogether of Council's and its elected members' abject failure when it came their affirmative obligations.

54.    The Criminal Complaint filed against Boyce with respect to Plaintiff charges his with violations consisting of

-18 Section 3126 sections A1:  Indecent Assault w/o the Consent of the other

-18 Section 2701 sections A3: Simple Assault

-18 Section 2709 sections A1 : Harassment – Subject Other to Physical Contact.

On September 11, 2024 a Magistrate held a preliminary hearing and bound him over for a Delaware County Court of Common Pleas criminal trial on all charges.

54.    Upon information and belief, Plaintiff understands that the investigation by the Attorney General's office, predicated on the initial investigation by the District Attorney, has been ongoing with respect to other possible victims.   An additional criminal complaint was filed against Boyce on August 13, 2024 with respect to another alleged victim, DES employee Sara Senkow (Schiller).  During the preliminary criminal hearing conducted on September 18, 2024, she  testified of her disgustingly inappropriate experience with Boyce going back to 2018, where Boyce showed her personal photos of his private parts maintained on his phone. She reported this to her then boss, Anthony Mignogna, and no action was taken against Boyce.  Apparently, this was followed by a November, 2023 incident where Boyce lifted her dress up to her thong undergarment, declaring that her tattoos were intriguing. She further testified that in January of 2024, Boyce put his hand on her butt, followed by a conversation later that month where Boyce described various sexual positions that he would like to engage in with her. She reported this

16

latest incident to her supervisor, Danielle Koerner, Chief of Special Operations. Upon

information and belief, Ms. Koerner dismissed her report and no action was taken against

Boyce. At the conclusion of the September 18, 2024 preliminary hearing Mr. Boyce was bound

over for a Delaware County Court of Common Pleas criminal trial on all charges.

55. Ms. Senkow's (Schiller) testimony demonstrates more in the way of complaints to

supervisory personnel going all the way back to 2018, without action taken against Boyce.

56. It was not until May 29, 2024 that Executive Director O'Malley announced, in an

email to DES employees, that " the County does not tolerate harassment, discrimination,

retaliation, abuse of power, or other violations of the County code or policies." Clearly, time and

events detailed herein have shown that the County and Defendants named had tolerated

harassment, discrimination, retaliation, abuse of power and other violations of the County code

or policies. Moreover Defendant O'Malley's words are also indicative of an intended whitewash,

given her clear words in announcing the retention of an outside law firm "in an effort to assure

that there are no violations of the code, policy or any other misconduct." By then the horse, and

Mr. Boyce, were well out of the barn.

57. Upon investigation, information and belief, the questions posed by this "outside law

firm" have been geared to establish ignorance on the part of County Council.

Upon information and belief, the clear implication of this taxpayer-funded exercise is to

exonerate County Council, as well as those on down, from any responsibility whatsoever when it

comes to oversight of County employee, Tim Boyce. Upon information and belief, at least one

interviewee told the law firm that everyone at the County knew what Boyce was up to.

58. Regardless of the County Council's denial of knowledge, the County Code at Section

6-18 makes the Personnel Department affirmatively "responsible for coordinating and overseeing

the hiring, training, assignment, reassignment, rotation, performance evaluation and discharge of

all personnel in the merit service and in unclassified positions." Further the Department is responsible for the establishment of duties and qualifications for all positions in consultation with the heads of County departments and offices." Instead of investigation, oversight, consultation and evaluation, Plaintiff believes that Boyce was given carte blanche to do whatever he chose to do.

59. During Plaintiff's tenure, Delaware County had in force a Personnel Handbook setting forth affirmative responsibilities of employees. Under the heading "Employment Policies" is the following statement: "The County of Delaware is committed to a policy of equal employment for all individuals. According to Title VI and Title VII of the Civil Rights Act of 1964 and other Federal, State, and Local Laws, the County of Delaware is an equal employment opportunity and prohibits discrimination on the basis of race, color, religion, disability, ancestry or national origin, gender, age, and military service. All personnel actions and decisions… is predicated solely on ability and the basis of valid job-related requirements." Clearly the Defendants have violated this professed standard in multiple of ways and at multiple times.

60. Further, under the Handbook section "Rules of Conduct" is a paragraph headed "Harassment & All Forms of Discrimination" stating in pertinent part that " Harassment of one employee by another will not be tolerated. Actions such as sexual threats, inappropriate comments, or physical contact of any nature are examples of harassment and will be considered justifiable grounds for discipline up to and including discharge." Further, it states that a "Department Director or Supervisor who receives information regarding a complaint must act on that complaint." Defendants' "Head in the Sand" approach doesn't absolve them of responsibility of taking the required steps nor does it absolve the supervisory personnel named herein who witnessed and/or were told about infractions by Boyce.

61. As detailed herein, Plaintiff's experience and the experience of those before her

18

have hardly been indicative of any commitment by the County to applicable law or policy. Had

there been any commitment, Boyce would have been gone long before Plaintiff's employment

with the County.

62.    During Plaintiff's tenure, the DELCO website touted Mr. Boyce, stating that "As

Director, Mr. Boyce leads a staff of 125 dedicated public servants that [sp] operate the County's

911 communications center, coordinate emergency management plans and provide a wide

variety of public services to augment and support first responders and the public."

63.    Incredibly, despite what has been pointed out hereinbefore, and what must have

been known to all Defendants named, since Boyce's departure, Mr. Beebe, of all people, has

been allowed by Council to act in his place with a formal announcement on September 5, 2024

by County Executive Director Barbara O'Malley to DES employees that:

> It is my pleasure that County Council has approved the appointment of Ed Beebe
> as Interim Director of the Department of Emergency Services effective September
> 9. As you know, we conducted many interviews through an external firm,
> speaking with many employees at DES. Based on the results of those
> conversations and his experience, we have complete confidence in the
> appointment of Ed Beebe as Interim Director
>
> We greatly appreciate the patience displayed by the entire team as we took time to
> ensure we have made the best decision for the department. Ed Beebe has shown
> care and commitment to the department and leadership during this challenging
> time. Ed Beebe is empowered to make decisions and to manage the department in
> his role as interim director. We also value his experience to work with executive
> staff here in the County to address the concerns identified by DES employees.
>
> …
>
> At this point, we do not have any plans to post for a replacement director.
> Recognizing the unique situation, we are in and the stability and familiarity that
> Ed Beebe brings to this role, we will maintain an Interim Director for a more
> lengthy time period …
>
> We look forward to Ed Beebe's tenure as leader of the department We appreciate
> all the work you do to keep the County safe.

64.   With this announcement, Ed Beebe promptly promoted Anthony Mignogna to be his Deputy.

65.   Contrary to Ms. O'Malley's assertion, upon information and belief, Edward Beebe and Anthony Mignogna never showed leadership or commitment to act in a way that kept Plaintiff or other females safe, let alone compliance with County Code reporting requirements. For years before Plaintiff's experience with Boyce they and others, including Office Manager Rodia, Deputy Mignogna, Ms. Samantha Cox, and Chief of Special Operations Danielle Koerner, had information and were in a position where they could have prevented Boyce from assaulting Plaintiff.

66.   As per the website quoted in paragraph 62 hereof, a "public servant" is what Plaintiff set out to be when she joined the DES; not a sex toy or a vulnerable piece of meat.

67.   Defendants allowed DES to exemplify a place of blatant sexism and sexual harassment rather than to exemplify a place of public service.

68.   Instead of Defendants' providing Plaintiff with a safe working environment where she could progress as a public servant based on her ability, Defendants provided Boyce with the opportunity to maintain unwilling "servants" for his personal sexual desires.

69.   Plaintiff's own devastating experience with Mr. Boyce, consisting of his male, sex-driven physical oppression against her and the existence of a hostile environment drove her back to her former work as a stylist, where she had to begin again, at a considerable financial loss.

70.   Plaintiff has been shockingly violated and sexually assaulted, all of which promises to traumatize her for the rest of her life, directly due to the callous and illegal inaction of Defendants.

71.     Had County Council,  its members, together with the rest of the Defendants

named, and undoubtedly others, exercised their affirmative responsibilities to provide a lawful

and safe workplace at DES, Boyce would have been long gone from County employment,

depriving him of the opportunity to sexually assault Plaintiff. Their years of calculated inaction,

going at least back to 2018, render these Defendants liable.

## COUNT I

### VIOLATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION and THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. SEC. 1983

**Kahler  v. County of Delaware & All Defendants in Their Official & Individual  Capacities**

72.     Plaintiff restates and reallege paragraphs 1 through 71  as though set forth here in

full.

73.     A Plaintiff asserting a civil rights violation under Section 1983 must establish (1)

the deprivation of a right secured by the United States Constitution or federal law; and (2) that

the alleged violation was acting under color of state law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204

(3d Cir. 1996)  Here liability rests with the governmental unit.

74.     Defendant County, its officials, and supervisory personnel have discriminated

against the Plaintiff by depriving  her of  her rights, privileges and immunities secured by the

Constitution or laws of the United States as applied to the States pursuant to the Fourteenth

Amendment. The Fourth Amendment to the U.S. Constitution as extended by the Fourteenth

Amendment provides a right to be free from unreasonable searches and seizures in conjunction

with respect to  governmental activity. Specifically, the Due Process and Equal Protection

clauses of the Fourteenth Amendment recognize this Plaintiff's right to be free from sexual

misconduct and/or abuse at the hands of a County employee.  Specifically, the Third Circuit has

recognized that "[i]ndividuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008)

75.     Furthermore, 14th Amendment notions of "substantive due process" and a "right to privacy" further  protect Plaintiff from what she has experienced. "To demonstrate that her substantive due process rights were violated [Plaintiff] must establish that "the government's deprivation of that protected interests shocks the conscience." *Kane v. Berger*, 902 F.3d 185, 192 (3d Cir. 2018) (citing *Chainey v. Street*, 523 F. 3d 200, 219 (3d Cir. 2008)   What Plaintiff has experienced certainly fulfills the "shocking to the conscience" standard  in terms of what she endured at the hands of Boyce and the deliberate indifference of County officials to Boyce's previous behavior. Case law which found official conduct and officials' responses thereto to have shocked the conscience involve serious sexual battery and assault such as that experienced by Plaintiff.

76.     Plaintiff must, and has, satisfied the "state-created danger" theory of liability, requiring Plaintiff to plead four elements. First, there most be foreseeable and fairly direct harm. Second , there must be action marked by "a degree of culpability that shocks the conscience". Third, there must be a relationship with the governmental unit that makes the plaintiff a foreseeable victim, rather than simply a member of the public, in general. Fourth, there must be an affirmative use of governmental authority in a way that created the danger. *Johnson v. City of Phila.*, 975 F.3d 394, 400 (3d Cir. 2020) (citing *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018)

77.     Boyce's conduct, as a state actor utilizing his official position and capacity, as set forth hereinabove, amounted to an invasion of Plaintiff's constitutional right to personal security from sexual exploitation, violating her constitutional right to bodily integrity.

78.     Having affirmative responsibilities as herein referenced, Defendant County and its officials, named defendants, instead provided an atmosphere enabling Boyce to violate the rights of Plaintiff and others before her.

79.     Plaintiff avers that Defendant County and its officials, for years, has had unconstitutional customs and policies of deliberately ignoring and failing to investigate Boyce's misconduct against Plaintiff and others before her, failing to adequately supervise and train County employees with respect to maintaining, preserving and protecting Plaintiff and other women from violations of their right to personal security and bodily integrity.

80.     Defendant County and those named in their official and individual capacities, along with others, have acted intentionally, deliberately, willfully, and have conducted themselves in callous and deliberate disregard of Plaintiff's rights enabling Boyce to violate those rights.

81.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer embarrassment, humiliation, financial harm, emotional and psychological harm, and pain and suffering, some or all of which may be permanent.

82.     As a direct and proximate result, Plaintiff has incurred attorneys' fees and other costs.

83.     By reason of Defendants action and inaction amounting to violation of Section 1983 protections, Plaintiff is entitled to all legal and equitable remedies available.

23

WHEREFORE, Plaintiff demands judgment in her favor and specifically against Defendant County of Delaware and the named Defendants acting in their official and individual capacities and requests an award of relief including, but not limited to compensatory damages, including any and all recoverable economic and noneconomic loss, punitive damages given that Defendants were reckless or callously indifferent, together with reasonable attorneys' fees and costs, and other relief as permitted under the law and as this Court deems just and proper.

### COUNT II

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000 *et seq***

**SEX DISCRIMINATION & MAINTENANCE OF A HOSTILE WORK ENVIRONMENT**

**Kahler v. The County of Delaware, Pa**

84.   Plaintiff restates and realleges paragraphs 1 through 83 as though fully set forth herein.

85.   Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, et seq. as amended by the Civil Rights Act of 1991 ("Title VII), makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex.

86.   Discrimination on the basis of sex that creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under Title VII as sex discrimination. In order to establish a hostile work environment, five factual elements must be established: (1) that the employee suffered intentional discrimination because of his or her protected characteristic; (2) that the discrimination detrimentally affected him or her; (3) that the discrimination was pervasive and regular; (4) that the discrimination would detrimentally affect a reasonable person in the same position as the employee; and (5) that respondeat superior liability exists.

87.   In the totality of circumstances described in the facts set forth hereinbefore, when

24

it comes to Plaintiff's physical mistreatment on account of her sex, the foregoing five elements are established.

88.     In addition, under Title VII, a hostile environment exists when the workplace "is permeated with discriminatory, intimidation, ridicule and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." In addition to Boyce's explicit sexual advances, a work environment that involves gender-based animosity, including sexist comments, remarks that intimidate, ridicule and maliciously demean the status of women can create an environment that is considered as hostile as one containing unwanted sexual advances.

89.     Plaintiff's work environment has consisted of both sexually harassing behavior as well as gender-based animosity, including sexist comments. By requiring Plaintiff to work in a sex-based hostile environment consisting of both verbal and physical abuse by Tim Boyce, Defendant County has violated Plaintiff's right to work in a non-abusive working environment.

90.     Defendant is also liable for discrimination alleged herein under the doctrine of *respondeat superior* due to the actions and statements of its managers and employees.

91.     Defendant is liable for the acts of management, Plaintiff's supervisors, and others, because they knew of the existence of a discriminatory and a hostile work environment but allowed the illegal acts and practices to continue and took no corrective action.

92.     Defendant is liable for the acts alleged herein because its governing body, appointed directors, supervisors, managers and employees established the culture which encouraged sex discrimination, harassment and retaliation against women in the Department of Emergency Services.

93.     Based upon the foregoing facts, Defendant has discriminated against Plaintiff on the basis of her sex and has deprived her of her rights in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. seq. as amended.

94.     Defendant's conduct has been intentional, deliberate, willful and were with malice or callous and reckless indifference to Plaintiff's rights protected by the United States, as well as the laws of the Commonwealth of Pennsylvania and the County Code, all conducted in callous disregard of the rights of the Plaintiff.

95.     Defendant's policies and/or practices have produced a disparate impact against the named Plaintiff with respect to the terms and conditions of employment.

96.     By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant County of Delaware and request an award of relief including but not limited to compensatory damages, including any and all recoverable economic and noneconomic loss, punitive damages, reasonable attorney's fees and costs and other relief as permitted under the law and as this Court deems just and proper.

## COUNT III

### VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT SEX DISCRIMINATION IN EMPLOYMENT, CREATING A HOSTILE WORK ENVIRONMENT AND RETALIATION

#### Kahler v. County of Delaware

97.     Plaintiff restates and realleges paragraphs 1 through 96 as though set forth here in full.

98.     This claim arises under the Pennsylvania Human Relations Act ("PHRA"). The Pennsylvania Human Relations Act, 43 P.S. § 955 *et seq.*, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment.

99.     Plaintiff is in a protected class because of her sex.

100.   Based upon the foregoing facts, Defendant has discriminated against Plaintiff on the basis of her sex and has deprived her of her rights in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955 *et. Seq.*

101.   The effect of the aforementioned practices has been to deprive Plaintiff of equal employment opportunities and adversely affect her status as an employee because of their sex and age.

102.   By reason of Defendant's discrimination and retaliation, Plaintiff is entitled to all legal and equitable remedies available.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant County of Delaware and requests an award of relief including, but not limited to compensatory damages, including any and all recoverable economic and noneconomic loss, reasonable attorneys' fees and costs, and other relief as permitted under the law and as this Court deems just and proper.

## COUNT IV

### NEGLIGENCE

#### Kahler v. Delaware County and All Defendants

103.   Plaintiff restates and realleges paragraphs 1 through 102 as though set forth here in full.

104.   At all relevant times these Defendants knew or should have known that Boyce had a reputation for inappropriate behavior and/or conduct with Plaintiff and other females years before her. Aside from their affirmative obligations cited hereinbefore, upon information, investigation, and belief, this knowledge ran the gamut from rumor and innuendo, to specific observation of Boyce's infractions. Notwithstanding , these Defendants   took no action to protect Plaintiff, including acting pursuant to their mandated responsibilities to investigate, take

personnel action and/or intervening to prevent what had transpired with Plaintiff and others before her.

105. At all relevant times, Defendants had a duty to recognize inappropriate conduct by Boyce with Plaintiff and other females and to protect them.

106. At all relevant times, Defendant County and top management thereof failed to properly train County employees to recognize and prevent inappropriate relations and/or conduct between County employees in the workplace.

107. At all relevant times, when it came to Boyce's interaction with female employees, the Defendants knew or should have known that Boyce's inappropriate behavior were warning signs that female employees, including Plaintiff, were in danger while they were in the care, custody and control of Defendant County.

108. At all relevant times, Defendant County, County Council Members, County Solicitor, and those in its Personnel Department, all named as Defendants herein failed to conduct anything in the way of routine checks or investigations with respect to DES.

109. Not only did the above-named Defendants fail to take any corrective affirmative action against Boyce, as was their duty to Plaintiff and other women, they allowed Boyce to remain employed with access to the workplace premises and allowed him to have the ability to engage in inappropriate conduct towards females.

110. All Defendants' actions and/or omissions as set forth in the foregoing paragraphs do constitute such negligent, wanton, willful and reckless conduct such that Plaintiff is entitled to the relief requested for her losses and damages as a result of their negligence.

111. By reason of the foregoing, Plaintiff is entitled to all legal and equitable remedies available.

28

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant County of Delaware and requests an award of relief including, but not limited to compensatory damages, including any and all recoverable economic and noneconomic loss, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted under the law and as this Court deems just and proper.

## COUNT V

## NEGLIGENT SUPERVISION OF TIMOTHY BOYCE

**Kahler v. Delaware County, County Council, Councilmembers Monica Taylor, Elaine Paul Schaefer, Kevin M. Madden, Christine A. Reuther, Richard R. Womack, Jonathan Lichtenstein, Christine Keck**

112.   Plaintiff restates and realleges paragraphs 1 through 111 as though set forth here in full.

113.   Plaintiff brings this Count of Negligent Supervision against those individuals above-named in both their official and individual capacities.

114.   The above-named Defendants, including but not limited to the County's elected leadership were negligent in the supervision of Timothy Boyce, thereby allowing him to engage in the conduct heretofore alleged.

115.   It has long been the law in Pennsylvania that an employer may be liable in negligence if it knew or should have known that an employee, such as Boyce, was dangerous, careless, or incompetent and such employment might create a situation where the employee's conduct would harm a third person, in this case Plaintiff.

116.   The named Defendants had an affirmative duty to provide reasonable supervision of its employees and agents, specifically Timothy Boyce.

117.   Given the innuendo that circulated and what has been otherwise described

29

hereinbefore, it was reasonably foreseeable that the named Defendants should have monitored and investigated Boyce such that he would not have been able to sexually assault Plaintiff.

118. The named Defendants knew or reasonably should have known that Boyce was conducting himself in an inappropriate sexual manner with females, but took no action to investigate, supervise, or monitor the same.

119. Instead, the named Defendants made the conscious decision to continue to employ Boyce, until after Plaintiff went to the DELCO District Attorney.

120. To willfully allow Boyce to be in a position placing employees safety, security, privacy and bodily integrity shocks the conscience and at the very least was reckless in nature.

121. Moreover, the named Defendants failed to formulate, adopt, implement and/or use an appropriate monitoring system to ensure the protection of Plaintiff and/or others similarly situated when they knew or should have known that Boyce had a reputation and/or propensity for acting inappropriately with female employees. The negligence of the named Defendants was the proximate cause of Plaintiff's actual loss and injury.

122. The named Defendants' breach of their duties to Plaintiff to provide reasonable supervision of Boyce was outrageous and committed willfully or with reckless indifference to Plaintiff and other women.

123. All of the named Defendants' actions and/or omissions as set forth in the foregoing paragraphs do constitute such negligent, wanton, willful and reckless conduct such that Plaintiff

is entitled to the relief requested for her losses and damages as a result of their negligent supervision of Boyce.

124.  By reason of the foregoing,  Plaintiff is entitled to all legal and equitable remedies available.

WHEREFORE, Plaintiff demands judgment in her favor and against the named Defendants and requests an award of relief including, but not limited to compensatory damages, including any and all recoverable economic and noneconomic loss, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted under the law and as this Court deems just and proper.

## JURY DEMAND

The Plaintiff demands trial by jury of all issues triable of right to a jury.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding.

Respectfully Submitted,

/s/ Mark D. Schwartz

_____

Mark D. Schwartz, Esquire
P.O. Box 330
Bryn Mawr, PA  19010-0330
Telephone & Fax: 610 525-5534
Email: MarkSchwartz6814@gmail.com
Pa. I.D. #30527

Date: September 30, 2024                    Counsel for Plaintiff, Jacqueline Kahler

31

## **VERIFICATION**

I, Jacqueline Kahler, do hereby certify that I am the Plaintiff in the within action, and that the facts continued in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I do further understand that these statements are made subject to the penalties of 18 Pa. C.S. Section 4904, relating to unsworn falsification to authorities.

Dated: **9/30/2024**

Jacqueline Kahler

Jacqueline Kahler