IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JACQUELINE KAHLER,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | NO. 24-5219 |
| **THE COUNTY OF DELAWARE, PENNSYLVANIA, et al.,** | : | |
| Defendants. | : | |

**J. Perez**                                                                                                                    September 26, 2025

### **MEMORANDUM**

Jacqueline Kahler, a former employee of the Delaware County Department of Emergency Services ("DES"), brought this suit alleging that Timothy Boyce, the former head of DES, sexually harassed her and other women in the workplace.[1] She further alleges that Boyce's harassment was made possible by the actions of Defendants the County of Delaware (the "County"), the Delaware County Council (the "Council"), the individual County Council members, Dr. Monica Taylor, Ms. Elaine Paul Schaefer, Mr. Kevin M. Madden, Ms. Christine A Reuther, and Mr. Richard R. Womack (collectively, "Councilmembers"), and Delaware County employees Jonathan Lichtenstein, Christine Keck, Barbara O'Malley, Edward Beebe, Regina Rodia, Anthony Mignogna, Samantha Cox, and Jane Does (collectively, "Employee Defendants"; together with the Councilmembers, "Individual Defendants").

In her Amended Complaint, Kahler brings five counts: Count I is brought against all Defendants under 42 U.S.C. § 1983, alleging a substantive due process violation; Count II is

---

[1] Boyce is not a named Defendant in this action.

1

brought against the County under Title VII of the Civil Rights Act of 1964, alleging discrimination on the basis of sex and maintenance of a hostile work environment; Count III is brought against the County under the Pennsylvania Human Relations Act (PHRA), alleging discrimination on the basis of sex, a hostile environment, and retaliation; Count IV raises a negligence claim against all Defendants; and Count V raises a claim of negligent supervision against the County, County Council, and Councilmembers. Am. Compl. at 21–31, ECF No. 4.

Defendants have moved to dismiss Counts I, III, IV, and V of the Amended Complaint. Mot. to Dismiss Pl.'s Am. Compl. for Failure to State a Claim, ECF No. 13. For the reasons discussed below, Defendants' motion is granted in part and denied in part.

I.     **Factual Background**[2]

Kahler, a 39-year-old female, worked for DES for around two months—first as a "coordinator" beginning in December 2023, then as Boyce's assistant from mid-January 2024 until her departure from DES on February 2, 2024. ECF No. 4 ¶¶ 13, 16.

Kahler alleges that during Boyce's eight-year tenure at DES, including before her hiring, Boyce made inappropriate comments and sexual advances to women in the workplace. *See id.* ¶¶ 28, 32, 36. Specifically, Boyce continually made Kahler feel uncomfortable with his sexually inappropriate comments. *Id.* ¶ 20. He called Kahler "smart, intriguing, sexy" and told her she was "beautiful" and "had a nice ass." *Id.* This culminated on January 30, 2024, when Boyce called Kahler into his office where no one could see them, pulled her in to hug her, touched her face, forcibly kissed her, and "grabbed her backside." *Id.* ¶ 21. After the incident, Kahler was distraught

---

[2] For this motion to dismiss, the Court accepts the Amended Complaint's factual allegations as true. *See Lewis v. Atlas Van Lines*, 542 F.3d 403, 405 (3d Cir. 2008) (When deciding a motion to dismiss, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." (citation omitted)).

2

and felt she had no choice but to quit her job immediately to escape Boyce's unwanted sexual advances. *Id.* ¶¶ 23–25.

Two months later, on April 2, 2024, Kahler was frustrated with Defendants' lack of inquiry into her sudden disappearance from work. *Id.* ¶ 46. So, she reported Boyce's behavior to the Delaware County District Attorney's Office, which opened an investigation. *Id.* On April 25, 2024, the Council placed Boyce on administrative leave. *Id.* ¶ 48. On May 10, 2024, the Council terminated Boyce's employment, and on May 16, 2024, the Pennsylvania Attorney General criminally charged Boyce for indecent assault without consent, simple assault, and harassment related to subjecting another to physical contact. *Id.* ¶¶ 53, 54. The criminal charges against Boyce are still pending.

According to Kahler, Defendants facilitated Boyce's conduct and protected him for years, despite his inappropriate sexual behavior being well known. *Id.* ¶ 6. Specifically, certain Individual Defendants turned a blind eye to Boyce's sexual advances that they witnessed, allowing him to, in his own words, "hide in plain sight." *Id.* ¶ 40; *see also id.* ¶¶ 36 (Defendant Rodia told an employee not to use a bathroom with a shower as it was used as a "sex room" and not to use the bathroom across from Boyce's office because "that's where nasty things happen"), 32 (Defendants Rodia and Beebe witnessed Boyce commenting on Brigid Payne's chest after asking her to try on a low-cut tank top), 38 (Defendants Beebe, Mignogna, and Rodia saw Boyce going into Maille Bonsall's office and shutting the door, and Bonsall complained of Boyce's inappropriate advances to Rodia, who made no report to HR). Kahler alleges Individual Defendants did not choose to ignore the workplace harassment on their own but that they were acting in accordance with a custom within DES of violating written County policies to protect Boyce and cover up other sex-based harassment in DES. *Id.* ¶ 29.

Kahler further contends that Defendants had an affirmative obligation as County employees to monitor, investigate, and report Boyce's behavior, stemming, in part, from the County Personnel Handbook. *See id.* ¶¶ 42, 59. Had Defendants investigated and/or reported Boyce's behavior, Boyce's employment would have been terminated, and he would have never had the chance to harm Kahler. *Id.* ¶ 6.

## II. Procedural History

On April 2, 2024, Kahler dual-filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"), asserting claims of sex discrimination on a continuing basis between December 4, 2023, through February 2, 2024. ECF No. 4 ¶ 10. On June 14, 2024, Kahler requested the EEOC issue a Right to Sue letter, and in response, the EEOC closed the matter on or around June 20, 2024. *Id.* ¶ 11. On July 9, 2024, the Department of Justice issued a Right to Sue Letter. *Id.*

On September 30, 2024, Kahler initiated this action. ECF No. 1. On October 15, 2024, she filed an Amended Complaint. ECF No. 4. On December 2, 2024, Defendants moved to dismiss Counts I and III–V. ECF No. 13. On April 30, 2025, Kahler responded in opposition. ECF No. 21. On May 7, 2025, Defendants filed a reply in support of their Motion. ECF No. 22.

Meanwhile, on November 1, 2024, and January 17, 2025, two additional complaints were filed raising similar allegations concerning Boyce's treatment of women in the DES workplace. *See Bonsall v. County of Delaware, et al.*, 24-5866; *Payne v. County of Delaware, et al.*, 25-295. On December 12, 2024, the Court consolidated *Kahler* and *Bonsall* for purposes of discovery only. ECF No. 17. On May 29, 2025, after the Payne complaint was filed, the Court consolidated all three cases for purposes of discovery only. ECF No. 23.

Defendants' Motion to Dismiss the Amended Complaint is now ripe for review.

4

### III. Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint that fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A complaint must contain sufficient factual material that, when accepted as true and considered in the light most favorable to the plaintiff, states a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Lewis*, 542 F.3d at 405. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] formulaic recitation of the elements of a cause of action will not do. . . . [A] complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–32 (3d Cir. 2008) (citation modified).

### IV. Discussion

#### A. Count I: Section 1983 Substantive Due Process Claim

The vehicle for holding a municipality or government official liable for deprivations of constitutional rights is 42 U.S.C. § 1983. In relevant part, § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

To state a claim under §1983, a plaintiff must plead (1) a violation of a Constitutional right, and (2) the violation "was committed by a person acting under color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (citation omitted).

Here, Kahler claims Defendants violated her right to substantive due process as guaranteed by the Fourteenth Amendment. ECF No. 4 ¶ 77. She brings two theories of liability: Boyce's assault was the result of a state-created danger, and it was the result of the County's unconstitutional customs and policies. *Id.* ¶¶ 76, 79–80.

Third Circuit precedent is clear that courts must "review the plaintiffs' municipal liability claims independently of the section 1983 claims against the [Individual Defendants], as the [County's] liability for a substantive due process violation does not depend upon the liability of any [individual officer or employee]." *Kneipp*, 95 F.3d at 1213. The Court addresses each theory in turn.

### 1. State-Created Danger

Generally, a municipality and its officials have no affirmative duty to protect members of the public against private harm. *See Kneipp*, 95 F.3d at 1204–05 (discussing *Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)). An affirmative duty is only triggered where a special relationship—*e.g.*, incarceration, institutionalization, or other similar restraint of personal liberty—exists between the state and the private person. *Id.* at 1205. But in the Third Circuit, plaintiffs may prevail under a narrow exception: where a state-created danger caused the plaintiff's harm. *Johnson v. City of Phila.*, 975 F.3d 394, 398–400 (3d Cir. 2020).

To state a state-created danger claim, a plaintiff must allege facts showing: (1) the plaintiff's harm was "foreseeable and fairly direct"; (2) "a state actor acted with a degree of culpability that shocks the conscience"; (3) a relationship between the state and plaintiff exists making the plaintiff "a foreseeable victim . . . or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions"; and (4) "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Bright v. Westmoreland Cnty.*, 443 F.3d

6

276, 281 (3d Cir. 2006) (citation modified). Here, Kahler alleges Defendants failed to prevent Boyce's harassment and assault of her by ignoring his misconduct, rather than investigating complaints or terminating his employment. *See* ECF No. 4 ¶¶ 75–80. Defendants primarily argue Kahler has not satisfied the fourth prong of the state-created danger test "because she has failed to plead any **affirmative act** by [Individual] Defendants that created the danger of which she complains." ECF No. 13 at 8 (emphasis added). The Court agrees with Defendants.

Recognizing the "inherent difficulty in drawing a line between an affirmative act and a failure to act," the Third Circuit has "repeatedly held that an alleged failure **to do something**, standing alone, cannot be the basis for a state-created danger claim." *Johnson*, 975 F.3d at 400–01 (citation omitted). The doctrine requires an affirmative act because "it is the misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Tangradi v. City/Cnty. of Phila.*, No. 21-2165, 2022 WL 815804, at *10 (E.D. Pa. Mar. 17, 2022) (quoting *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 242 (3d Cir. 2016)). One way to think about distinguishing affirmative act from omission is "to first evaluate the setting or the 'status quo' of the environment before the alleged act or omission occurred, and then to ask whether the state actor's exercise of authority resulted in a departure from that status quo." *L.R.*, 836 F.3d at 243.

In some circumstances, "[t]he state affirmatively acts when it **removes** a barrier that would otherwise prevent access to the [plaintiff]." *P.W. v. Chester Cmty. Charter Sch.*, No. 22-840, 2022 WL 4360050, at *2 (E.D. Pa. Sept. 20, 2022). In contrast, "**not instituting** a barrier to access is merely passive failure to act." *Id.* The question is whether the alleged affirmative act "created a new danger" or rendered the plaintiff "more vulnerable to danger than had the state not acted at all." *Morrow v. Balaski*, 719 F.3d 160, 178 (3d Cir. 2013) (quoting *Bright*, 443 F.3d at 281). It is

not enough to allege "officials might have done more" to prevent a harm. *Id.* at 179. They must have "created or increased the risk itself." *Id.*

Two Third Circuit cases illustrate this principle. In *L.R.*, the court evaluated whether a kindergarten teacher, who allowed a student to leave with an adult without verifying their identity, had affirmatively acted such that she could be sued when that adult assaulted the child. 836 F.3d at 243. The court defined the classroom environment as one where "the teacher acts as the gatekeeper for very young children who are unable to make reasoned decisions about when and with whom to leave the classroom." *Id.* In a kindergarten classroom, children's freedom of movement is restricted—they even require permission to leave the room to use the bathroom. *Id.* In those circumstances, the child "was safe in her classroom unless and until her teacher . . . permitted her to leave." *Id.* Granting permission to the child to leave with an unidentified adult was more than a failure to intervene—it was an affirmative exercise of her authority that "resulted in a drastic change to the classroom status quo, not a maintenance of a situation that was already dangerous." *Id.* at 244.

In contrast, *Morrow* found no state-created danger where school administrators suspended a student and the plaintiff for fighting and allowed both to return to school after the suspension, despite the student being adjudicated delinquent for assault. 719 F.3d at 164, 179. Upon her return, the student assaulted the plaintiff again, and the plaintiff sued the school and administrators. *Id.* at 164–65. The plaintiff argued that had the school expelled the student after being adjudicated delinquent, as was required by school policy, the final assault of the plaintiff would not have occurred. *Id.* at 177. The Court explained that a failure to expel the student, even when that failure was contrary to mandatory school policy, is not an affirmative act that triggers a duty to protect. *Id.* at 178.

8

Here, Kahler was allegedly assaulted in an adult work environment. Unlike students in a kindergarten classroom, Kahler's freedom of movement was not restricted by the very nature of the environment. Like in *Morrow*, Defendants here allegedly did not follow their own policies requiring them to investigate or report Boyce's misconduct, but those failures did not create the danger—Boyce did. Nor did Defendants alter the status quo by affirmatively exercising their authority. Rather, it was their failure to report, or their inaction, that maintained a situation that was already dangerous. *See L.R.*, 836 F.3d at 244; *see also H.U. and B.U. v. Colonial Northampton – IU 20*, No. 5:18-cv-3896, 2020 WL 5292073, at *2 (E.D. Pa. Sept. 4, 2020) (holding failure to inform transportation staff of student's history of violence could not give rise to state-created danger claim because failure to inform did not alter status quo, which was that transportation staff never knew student's history); *P.W.*, 2022 WL 4360050, at *2 (holding failure to prevent student from boarding bus despite previous misconduct is passive inaction, not affirmative act).

While Boyce's behavior and Employee Defendants' failure to report it allegedly violated County policy, Kahler points to no **affirmative** acts by Defendants that "created or increased the risk" of sexual abuse to her. *Morrow*, 719 F.3d at 179. Even if Defendants could have done more to protect Kahler or prevent the assault, their failure to report, investigate, or stop Boyce's conduct did not "create[] a new danger" or render Kahler "more vulnerable to danger than had the state not acted at all." *Id.* at 178 (quoting *Bright*, 443 F.3d at 281).

Kahler asks the Court to keep in mind "that time and again, responsible officials made the affirmative decision to not fulfill their reporting responsibilities" under the County Personnel Handbook. ECF No. 21 at 12; ECF No. 4 ¶ 42. But a plaintiff cannot "morph passive inaction into affirmative acts" by "merely restating the Defendants' inaction as an affirmative failure to act."

9

*Morrow*, 719 F.3d at 179. Such linguistic gymnastics "does not alter the passive nature of the alleged conduct." *Id.*

Accordingly, Kahler has not stated a state-created danger claim in Count I.

### 2.  Unconstitutional Custom

*Monell v. Department of Social Services of the City of New York* limits the circumstances in which a municipality may sued under § 1983. 436 U.S. 658 (1978); *see also Kneipp*, 95 F.3d at 1211. To impose municipal liability, a plaintiff must show "acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered"—caused her alleged harm. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). A municipality is not liable for its employees' actions under a respondeat superior theory. *Johnson*, 975 F.3d at 403. It is liable for "only those constitutional torts actually caused by the municipality." *Poe v. Se. Delco Sch. Dist.*, 165 F. Supp. 3d 271, 276 (E.D. Pa. 2015) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996)). Under *Monell*, therefore, a plaintiff must allege: "(1) a constitutionally protected right has been violated, and (2) the alleged violation resulted from a municipal policy, custom, or deliberate indifference." *Tangradi*, 2022 WL 815804 at *5 (citing *Monell*, 436 U.S. at 694–95).

Defendants do not dispute that Kahler has asserted a violation of a constitutionally protected right—the right to bodily integrity. The Third Circuit has recognized "personal bodily integrity" to include the right to be free from unauthorized and unlawful physical abuse or intrusion by state actors, including sexual assault. *Kane v. Barger,* 902 F.3d 185, 192 (3rd Cir. 2018). Kahler alleged Boyce sexually assaulted her by forcibly hugging, touching, and kissing her. ECF No. 4 ¶ 21. Accordingly, Kahler has satisfied the first prong of *Monell*,[3] and this Court must move on to the second prong.

---

[3] Defendants argue Kahler must allege a state-created danger to satisfy the first prong of *Monell*. ECF No. 22 at 3–4. The Court disagrees. The sufficiency of her state-created danger claim against

Kahler asserts her injury resulted from the municipality's customs of failing to report sexual misconduct, failing to conduct investigations into sexual misconduct, and failing to terminate or otherwise discipline Boyce based on his misconduct. *See* ECF No. 4 ¶¶ 42, 79, 60. She alleges that in practicing those customs, County officials, who either knew or should have known of Boyce's history of misconduct, exhibited deliberate indifference. *Id.* ¶ 75.

A municipality may be liable under §1983 if a "violation of rights was caused by the municipality's policy or custom." *Johnson*, 975 F.3d at 403 (citation omitted). A municipality's "custom" is the practice of state officials, where not authorized by law, that is "so permanent and well-settled as to virtually constitute law." *Beck*, 89 F.3d at 971 (citation modified). "[C]ustom may be established by proving knowledge of, and acquiescence to, a practice." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007). A plaintiff need not "plead with special particularity the exact policies and practices that were in place, prior to taking any discovery into the alleged policies, and explain exactly how these precisely alleged policies caused or contributed to [an individual's] injuries." *McIntyre v. Cnty. of Del.*, No. 18-5066, 2019 WL 3934914, at *5 (E.D. Pa. Aug. 19, 2019) (alteration in original) (quoting *Rodriguez v. City of Phila.*, No. 14-7362, 2015 WL 4461785, at *4 (E.D. Pa. July 21, 2015)) (denying motion to dismiss where plaintiffs detailed the many ways in which the county's custom and practice of unequal treatment of male and female employees was carried out). But it is sufficient to allege facts supporting the inference that the injuries were caused by the acts of a defendant as a result of County policy. *See Rodriguez*, 2015

---

Individual Defendants is distinct from the sufficiency of her *Monell* claim against the County— one can exist without the other. *See, e.g.*, *Pearson v. Marple Twp.*, No. 23-4444, 2025 WL 2423741, at *8 (E.D. Pa. Aug. 21, 2025) (dismissing state-created danger claim against individual defendants but still considering failure to train theory under *Monell*).

WL 4461785, at *4 (denying motion to dismiss where plaintiff was denied a cast on a broken bone based on prison policy, even where plaintiff could not identify specific policy).

Here, Kahler establishes a pattern of DES supervisory employees choosing not to report sexual harassment that they personally observed or learned of through complaints, despite a policy requiring them to do so. *See, e.g.*, ECF No. 4 ¶¶ 32 (Rodia, Beebe, and Mignogna's failure to report Boyce asking to see female employee bend over to expose her chest), 34–35 (Mignogna and Cox's failure to report Boyce's inappropriate inquiries about female employee's sexual habits), 37 (Rodia, Beebe, and Mignogna's failure to report Boyce's stalking of a female employee and Rodia's failure to report that employee's complaints). She alleges that this was a custom that was practiced by the County and its officials for years. *Id.* ¶ 79. Further, this practice was not limited to Boyce's mistreatment of Kahler or even to Boyce's misconduct toward female employees—it was carried out with respect to other complaints about sex-based harassment by other males from DES supervisors which were simply covered up. *Id.* ¶ 29. Additionally, Boyce believed he was protected by this custom, claiming he could "hide in plain sight" and that he had Councilmembers "in his pocket." *Id.* ¶¶ 41–42.

At the pleading stage, Kahler cannot be expected to know how this custom came to be or what entity or policymaker is responsible for its formulation. *See Ramos-Vazquez v. PrimeCare Med., Inc.*, No. 09-00364, 2010 WL 3855546, at *9 (E.D. Pa. Sept. 30, 2010) ("At [the pleading] stage, Plaintiff cannot be expected to specify and articulate which policy, procedure or custom resulted in these actions; nor should he be expected to know which entity formulated each policy."). The Court finds it sufficient that Kahler has alleged Defendants were aware of Boyce's misconduct over the course of eight years and that the abuse was perpetuated as a result of the County's custom. Kahler has provided "enough facts to raise a reasonable expectation that

discovery will reveal evidence of" the existence of the alleged custom and that it caused the violation of Kahler's constitutional rights.[4] *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 566). Whether Kahler can produce evidence supporting liability under this theory will be resolved at a later stage in this litigation, and the County may reassert arguments on custom and deliberate indifference and raise a dispute with respect to causation at summary judgment, if appropriate. *See Poe*, 165 F. Supp. 3d at 277 (denying motion to dismiss without prejudice to allow defendants to re-assert their arguments at summary judgment with respect to whether district was deliberately indifferent in its failure to train).

However, because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), this Court will dismiss Kahler's *Monell* claim in Count I against the Council and Individual Defendants in their official capacities. *See Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) (affirming dismissal of claims against public officers in official capacities because such suits are "functionally . . . suit[s] against the public entity that employs them"). Because Kahler is suing the County, "the suit against the officers in their official capacities is redundant." *Id.*; *see also Wardlaw v. City of Phila.*, No. 09-3981, 2011 WL 1044936, at *9 (E.D. Pa. Mar. 21, 2011) (dismissing claims against individual

---

[4] Defendants do not argue Kahler has insufficiently alleged causation, and the Court need not consider an argument that is not briefed. *See Brown v. Smith*, No. 20-8463, 2023 WL 120458, at *9 n.7 (D.N.J. Jan. 5, 2023). Whether Kahler can present facts showing the County's custom of ignoring harassment was the "driving force" behind Boyce's misconduct will be born out in discovery. *See Schlaybach v. Berks Heim Nursing & Rehab.*, 434 F. Supp. 3d 342, 351 (E.D. Pa. 2020) ("[A] municipal policy or custom—as opposed to the independent conduct of a municipal employee—must be the 'driving force' behind the alleged harm." (citation omitted)). Nonetheless, Kahler need not plead in detail exactly how the alleged custom caused or contributed to her injuries. *McIntyre*, 2019 WL 3934914, at *5. Accepting the facts alleged in the Amended Complaint as true, the Court finds that Kahler met her burden in identifying a custom that violated her right to bodily integrity at this stage of the proceedings.

defendant in official capacity because of "inherent redundancy in naming as defendants" both the municipality and the individual defendant in his official capacity).

Therefore, while Kahler has stated a *Monell* claim against the County, Count I is dismissed with prejudice insofar as it is asserted against the County Council and Individual Defendants in their official capacities.

### B.     Count III: Violations of the PHRA

Kahler brings a claim of sex discrimination, hostile work environment, and retaliation under the PHRA against the County. ECF No. 4 ¶¶ 97–102. The County moves to dismiss the PHRA claim for failure to exhaust administrative remedies because Kahler filed her Complaint and Amended Complaint without waiting the requisite one year after filing her administrative complaint with the Pennsylvania Human Relations Commission ("PHRC"). Kahler argues only that "at present the one-year anniversary has passed," so the PHRA claim "has now ripened." ECF No. 21 at 17.

Before bringing a claim for judicial relief, a plaintiff "must exhaust all required administrative remedies." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (citation omitted). Under the PHRA, a plaintiff must file a complaint with the PHRC and allow the PHRC one year to resolve the complaint before exhausting judicial resources. *McCreary v. Adult World, Inc.*, 729 F. Supp. 3d 458, 466 (E.D. Pa. 2024). If a plaintiff sues for an alleged PHRA violation before the one-year period has lapsed, the filing is premature. *Bushra v. Main Line Health, Inc.*, 709 F. Supp. 3d 164, 172 (E.D. Pa. 2023). And once a plaintiff invokes the PHRA's procedures, she must use the administrative procedures provided for resolving her claim in "good faith." *Schweitzer v. Rockwell Int'l*, 586 A.2d 383, 387 (Pa. Super. Ct. 1990) (affirming grant of summary judgment on PHRA claim where plaintiff requested that PHRC transfer case to EEOC only 9 months after filing and PHRC closed case at plaintiff's request).

Notwithstanding the PHRA's one-year requirement, "courts in the Third Circuit have adopted a more flexible approach to PHRA exhaustion by permitting plaintiffs to maintain PHRA claims if the period of exhaustion expires during the pendency of litigation or if plaintiff files an amended complaint after the period of exhaustion." *Eldridge v. Mun. of Norristown*, 828 F. Supp. 2d 746, 758 (E.D. Pa. 2011) (collecting cases); *see also Rosetsky v. Nat'l Bd. of Med. Examiners of U.S., Inc.*, 350 F. App'x 698, 703, 703 n.3 (3d Cir. 2009) (explaining that district court does not have jurisdiction over PHRA claim until one-year period has expired but may allow plaintiff to amend after one-year period expires).

Here, Kahler dual-filed charges with the EEOC and PHRC on April 2, 2024, and after just over two months, she requested a Right to Sue letter from the EEOC. ECF No. 4 ¶¶ 10–11. She then initiated this action on September 30, 2024, less than six months after filing with the PHRC. *Id.* ¶ 10; ECF No. 1. She filed her Amended Complaint two weeks later. *See* ECF No. 4 ¶ 10. Clearly, Kahler filed her Amended Complaint before the one-year period passed, and despite arguing that her claim has now ripened, Kahler cites no case law supporting her proposition that the claims should proceed. *See* ECF No. 21 at 16–17.

While this court has recognized the difficulty plaintiffs face because of the disparate timing requirements of Title VII and the PHRA,[5] the EEOC did not unilaterally conclude its investigation and issue a right to sue letter, thereby expediting Kahler's filing deadline. *See Bushra*, 709 F. Supp. 3d at 172; *see also Schweitzer*, 586 A.2d at 387. Kahler caused the EEOC to close its investigation

---

[5] Title VII requires plaintiffs to sue within 90 days of the EEOC's issuance of a Right to Sue letter. *See Bushra*, 709 F. Supp. 3d at 172 ("[D]ual-filing may present an administrative exhaustion issue when a federal complaint is docketed. Where . . . the EEOC first investigates the matter and issues the notice of right to sue, the complainant must file suit within ninety days or lose out on his Title VII claims. . . . But if the PHRC has not also dismissed the suit within ninety days, then the PHRC claims are premature until one year has passed.").

of her claim a mere two months after she filed it and then initiated this action. ECF No. 4 ¶ 10. She then amended her complaint shortly thereafter, well before the PHRC had the opportunity to resolve her claim administratively. Kahler has not provided any legal authority or explanation as to how, under these circumstances, she has sufficiently pled administrative exhaustion. This Court will grant Defendant's motion to dismiss Count III without prejudice. *See Piety Foley v. Drexel Univ.*, No. 22-1777, 2023 WL 3767744, at *6 (E.D. Pa. June 1, 2023) (dismissing without prejudice PHRA claims that were not exhausted at the time the amended complaint was filed, even though at time of opinion, a year had passed); *see also McCreary*, 729 F. Supp. 3d at 466–67 (dismissing PHRA claim without prejudice because "a plaintiff is barred from asserting a PHRA claim" "during the PHRC's one year conciliation period" but recognizing plaintiff may amend her complaint after the PHRC completes the administrative process if the PHRA claim is not resolved).

### C.    Counts IV and V: Negligence and Negligent Supervision

Kahler asserts a negligence claim against the County and "All Defendants" and a negligent supervision claim against the County, County Council, and Individual Councilmembers. She brings her claims against Individual Defendants in their official and individual capacities. Defendants move to dismiss both counts because they argue they are immune from liability under the Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. § 8541, *et seq.*

"The PSTCA governs the extent to which political subdivisions . . . may be held liable in tort." *Jean v. City of Phila.*, 604 F. Supp. 3d 271, 274 (E.D. Pa. 2022). Under Pennsylvania law, unless one of nine exceptions applies, municipalities, local agencies, and their employees shall not "be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S.A. § 8541; 42 Pa. C.S.A. § 8542 (listing categories of "negligent acts" for which a local agency may be held liable); 42 Pa.

C.S.A. § 8545 ("An employee of a local agency is liable for civil damages . . . only to the same extent as his employing local agency . . . .").

Defendants are a municipal employer and its officials and employees who are generally entitled to governmental immunity. *See* 42 Pa. C.S.A. §§ 8541, 8545. No exception applies here.[6] Kahler's state law tort claims against the County, County Council, and Individual Defendants in their official capacities are therefore barred as a matter of law and must be dismissed with prejudice.

But the PSTCA does not protect public employees from liability in their personal capacity where the alleged torts involved "malicious or willful conduct." *Cornell Cos., Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 277 (E.D. Pa. 2007); 42 Pa. C.S.A. § 8550 (county employees not immune when tortious act "constituted a crime, actual fraud, actual malice, or willful misconduct"). Under Pennsylvania law, "willful misconduct is a demanding level of fault." *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006). It occurs where "the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied[,]" *i.e.*, where the plaintiff establishes "specific intent." *Bright*, 443 F.3d at 287 (quoting *Robbins v. Cumberland Cnty. Children & Youth Servs.*, 802 A.2d 1239, 1252–53 (Pa. Commw. Ct. 2002)). "'[W]illful misconduct' in this context has the same meaning as the term 'intentional tort.'" *Id.* (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001)).

---

[6] Kahler argues the sexual abuse exception applies under 18 Pa. C.S.A. § 8542(b)(9). The PSTCA's sexual abuse exception imposes liability for "conduct which constitutes an offense enumerated under section 5551(7) . . . if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence." Section 5551(7), meanwhile, is explicitly limited to sexual assault where "the victim was under 18 years of age at the time of the offense." 18 Pa. C.S.A. § 5551(7). Thus, the sexual abuse exception to PSTCA immunity applies only when the victim of sexual assault is under the age of 18 at the time of the offense. *Jean*, 604 F. Supp. 3d at 274–75. Kahler was not a minor when Boyce assaulted her, so the sexual abuse exception does not apply.

Kahler does not argue that any Individual Defendants engaged in willful misconduct with respect to either state tort claim, nor does she identify facts that would establish they acted with specific intent for Boyce to assault or harass her. Nevertheless, this Court cannot say at this stage that amendment would be inequitable or futile, so it will dismiss Kahler's state law tort claims against the Individual Defendants in their individual capacities without prejudice. *See Phillips*, 515 F.3d at 236.

V.     Conclusion

For the foregoing reasons, the Court dismisses with prejudice Count I against the County Council, and the Court dismisses without prejudice Count I against Individual Defendants. The Court allows Count I to proceed against the County. The Court dismisses Count III without prejudice. The Court dismisses with prejudice Counts IV and V against the County, County Council, and Individual Defendants in their official capacities. The Court dismisses without prejudice Counts IV and V against Individual Defendants in their individual capacities.

BY THE COURT:

_____
Hon. Mia R. Perez